IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN MICHAEL RYAN,    )<br>   )<br>      Plaintiff,    )<br>   )<br>vs.    )<br>   )<br>STATE FARM FIRE AND CASUALTY    )<br>COMPANY; TONY COOKS; and RON    )<br>PORTER,    )<br>   )<br>      Defendants.    )  | Case No. 09-CV-138-GKF-PJC |

# O P I N I O N   A N D   O R D E R

This matter comes before the court on plaintiff's Motion to Remand [Doc. No. 8]. For the reasons set forth below, plaintiff's motion is denied.

This case was originally filed in Tulsa County District Court and was removed to this court pursuant to 28 U.S.C. §§1332 and 1441. In removing the case, defendant State Farm Fire and Casualty Company ("State Farm") claimed the amount in controversy exceeds $75,000 and the single non-diverse defendant, Tony Cooks, had been fraudulently joined in an effort to defeat diversity jurisdiction. Plaintiff's Motion to Remand alleges this court lacks subject matter jurisdiction and the case should be remanded because: 1) defendants' claim of fraudulent joinder is not supported by the pleadings or evidence; and 2) defendants failed in their Notice of Removal to establish the requisite amount in controversy.

## I. Background

Plaintiff filed his Original Petition in Tulsa County District Court on April 23, 2008 [Doc. No. 2-2] and an Amended Petition on May 9, 2008 [Doc No. 2-4]. Plaintiff alleges in his Amended Petition that in November 2007, he had a property insurance policy with State Farm

Fire & Casualty Company ("State Farm"), Policy Number FP-7900.1, on his 1995 Baja boat. [Amended Petition, Doc. 2-4, ¶9]. The boat and trailer, which were stored at his business near Grand Lake in Ketchum, Oklahoma, were stolen during the 2007 Thanksgiving holiday. [*Id.,* ¶¶1-2]. He reported the loss to local police and to State Farm. [*Id.,* ¶3]. The boat was found in Duck Creek on about December 1, 2007, stripped, gutted and partially submerged under water. [*Id.,* ¶¶4-5]. What remained of the boat was towed to storage, where it remains, and plaintiff still incurs storage fees on the boat. [*Id.,* ¶¶6-8]. The Amended Petition alleges plaintiff timely reported the property damage and losses to State Farm, [*Id.,* ¶15]. Plaintiff alleges defendants Tony Cooks and Ron Porter, who are licensed to investigate insurance claims for State Farm, and operate out of the Tulsa Operations Center, Special Investigative Unit, conducted a special investigation of his property damage and "one or both accused Plaintiff of committing a crime, and linked accusations to insurance fraud." [*Id.,* ¶¶12, 16]. Further, the Amended Petition alleges Cooks and Porter "had no basis in law or fact to accuse and communicate to third parties Plaintiff had concealed and misrepresented facts surrounding the theft of his boat." [*Id.,* ¶17]. Plaintiff alleges State Farm failed to timely pay benefits owed under the policy. [*Id.,* ¶18]. Plaintiff states, "After repeated demands, State Farm finally paid its undisputed value of the claim, in excess of $40,000." [*Id.,* ¶24].

Plaintiff asserts claims for breach of contract against State Farm (Count I), bad faith and "institutional bad faith" against State Farm (Count II), and slander against all defendants (Count III). With respect to the breach of contract claim, plaintiff seeks actual damages against State Farm in excess of $10,000, attorneys' fees, court costs and interest, reduced by the amount of undisputed value State Farm paid in May of 2008. [*Id.,* p. 4]. On the bad faith breach of contract

2

claim, plaintiff seeks actual and punitive damages against State Farm in excess of $10,000, plus attorneys' fees, court costs and interest. [*Id.,* p. 6]. With respect to the slander claim, plaintiff seeks "actual and punitive damages against each Defendant, jointly and severally, in an amount in excess of $10,000," attorneys' fees, court costs and interest. [*Id.,* p. 7].

On March 12, 2009, State Farm removed the case to federal court. [Doc. No. 2]. State Farm alleged in its Notice of Removal that it had discovered during the deposition of a witness, Derrick Bidleman, that defendant Cooks was fraudulently joined and thus, pursuant to 28 U.S.C. §1446(b), it was entitled to remove the action.

## II. Analysis

Under 28 U.S.C. §1441(a), a defendant may remove a case filed in state court to federal court if the case could have been brought in federal court originally. Federal district courts have original jurisdiction of all civil actions involving citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. §1332(a). A defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921); *Slover v. Equitable Variable Life Insurance Company,* 443 F.Supp.2d 1272, 1276 (N.D. Okla. 2006).

Here, State Farm argues plaintiff fraudulently joined the sole non-diverse defendant, Tony Cooks, in an effort to thwart diversity jurisdiction. As the part invoking this court's jurisdiction, State Farm bears the burden of establishing the jurisdiction requirements. *Martin v. Franklin Capital Corp.,* 251 F.3d 1284, 1290 (10th Cir. 2001). Specifically, defendant must establish by a preponderance of the evidence the amount in controversy exceeds $75,000. *Id.* Further, defendant, in order to prove fraudulent joinder, must show that plaintiff either (1)

3

committed outright fraud in pleading the jurisdictional facts, or (2) has no possibility of recovery against the non-diverse defendant. *Dodson v. Spilada Maritime Corp.,* 951 F.2d 40, 42-43 and n. 3 (5th Cir. 1992); *Slover,* 443 at 1276.

## A. Jurisdictional Amount

"The amount in controversy is ordinarily determined by the allegations of the complaint or, where they are not dispositive, by the allegations in the notice of removal." *Laughlin v. Kmart Corporation,* 50 F.3d 871, 873 (10th Cir. 1995). In *McPhail v. Deere & Co.,* 529 F.3d 947, 954-55 (10th Cir. 2008), the court noted its previous opinions "have not been entirely clear" on the standards for evaluating the amount in controversy, and amplified its ruling in *Laughlin.* The court held that the removing defendant "must affirmatively establish jurisdiction by proving jurisdictional *facts* that make it *possible* that $75,000 [is] in play." *Id.* at 955. Further elaborating, the court stated:

> To recap: a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.

*Id.* at 955, citing *Meridian Security Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir. 2006). The court further elaborated:

> [A] plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount. This would allow frustration of the purpose of diversity jurisdiction, which is, after all, to protect the out-of-state defendant. Still, in the absence of an explicit demand for more than $75,000, the defendants must show how much is in controversy through other means.

*Id.* The court held that the defendant may establish the amount in controversy by: 1) relying on

4

an estimate of the potential damages from the allegations in the complaint; 2) providing other documentation–either interrogatories obtained in state court before removal was filed, affidavits or other evidence submitted in federal court after removal; or 3) a plaintiff's proposed settlement amount. *Id.* at 956-57. The court commented:

> The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.

*Id.* at 957.

Here, State Farm, in its Notice of Removal, asserted the Amended Petition affirmatively established plaintiff is seeking an amount in excess of $75,000. [Doc. No. 2, ¶10]. State Farm contends the actual and punitive damages claims for the slander claim against all defendants, when aggregated, total $80,000, as follows:

- $10,000 actual damages against Ron Porter for his alleged slanderous statements;
- $10,000 actual damages against Tony Cooks for his alleged slanderous statements;
- $10,000 actual damages against State Farm for Porter's statements;
- $10,000 actual damages against State Farm for Cooks's statements;
- $10,000 punitive damages against Porter for his statements;
- $10,000 punitive damages against Cooks for his statements;
- $10,000 punitive damages against State Farm for Porter's statements;
- $10,000 punitive damages against State Farm for Cooks's statement.

[*Id.,* ¶12].

Alternatively, State Farm asserted in its Notice of Removal that the aggregate of damages

for all counts against it (breach of contract, bad faith breach of contract and slander) were sufficient–without considering claims against the individual defendants–to satisfy the jurisdictional requirement. [*Id.,* ¶18]. State Farm analyzed the claims as follows:

- Breach of Contract Claim–$10,000 actual damages

- Bad Faith Breach of Contract Claim–$10,000 actual damages and $10,000 punitive damages

- Slander/Defamation Claim–$10,000 actual damages for conduct of Porter, $10,000 actual damages for conduct of Cooks, $10,000 punitive damages for conduct of Porter and $10,000 punitive damages for conduct of Cooks.

- Attorneys Fees–Assuming a modest rate of $150 per hour, plaintiff's attorney would need to work less than 34 hours on the case to reach a total of $5,000 in fees.[1]

[*Id.*]

Both analyses require aggregation of the slander claims against defendants in order to reach the jurisdictional limit. Plaintiff contends that the "rules of aggregation" do not permit this, and further, that State Farm cannot include the value of the claims against Cooks because it

---

[1] State Farm also contends that–even excluding the value of the claims against Cooks, the jurisdictional amount is reached because of the potential amount of punitive damages. [*Id.,* ¶¶13-15]. State Farm cites 23 O.S. §9.1(B), which allows a jury to award up to $500,000, without regard to the amount of damages, for an insurer's intentional and malicious breach of its duties to act fairly and in good faith, and 23 O.S. §9.1(C), which allows a jury award of up to $100,000, without regard to the amount of actual damages, for an insurer's reckless disregard of its duty to deal fairly and act in good faith. However, mere invocation of state law limits on punitive damages does not establish the underlying facts required by *Laughlin* and *McPhail* to fix the amount in controversy. *See DKNP, L.L.C. v. Hartford Casulaty Insurance Company,* 2007 WL 120726 at *4 (N.D. Okla. Jan. 10, 2007).

6

contends Cooks was fraudulently joined.

Where a single plaintiff has multiple claims against a single defendant or against two or more defendants jointly, and the claims are of such a character that they may properly be joined in one suit, the aggregate amount thereof is for the purpose of federal jurisdiction the amount in controversy. *Alberty v. Western Surety Company,* 249 F.3d 537, 538 (10th Cir. 1957). *See also, Middle Tenn. News Co. v. Charnel of Cincinnati,* 250 F.3d 1077, 1081 (7th Cir. 1001); *Hayfield v. Home Depot U.S.A., Inc.,* 168 F.Supp.2d 436 (E.D. Pa. 2001). Plaintiff, in his Amended Petition, seeks to hold all three defendants jointly and severally liable for slander. Therefore, State Farm is entitled to aggregate the damages on the slander claim.

However, plaintiff posits an additional objection to inclusion of the damages claimed against Cooks, arguing that since State Farm contends he was fraudulently joined, it cannot include damages claimed against him in its economic analysis. Plaintiff cites no case authority in support of its position, and courts have generally held that for purposes of a remand inquiry, events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction. *See Poore v. American-Amicable Life Ins. Co. of Texas,* 218 F.3d 1287 (11th Cir. 2000); *Wisconsin Dept. Of Corrections v. Schacht,* 524 U.S. 381, 391 (1991); *Nerad v. Astrazeneca Pharmaceuticals, Inc.,* 2006 WL 2879057 at *2 (10th Cir. 2006); *Asociacion Nacional de Pescadores v. Dow Quimica de Colombia, S.A.,* 988 F.2d 559, 565 (5th Cir. 1993). Further, in *Slover,* where claims for actual and punitive damages had been made against defendants who were alleged to have been fraudulently joined, the court first analyzed and decided the amount in controversy question before proceeding to the issue of fraudulent joinder. 443 F. Supp. at 1277-78. Finally, to permit

7

plaintiff to disavow damages of a fraudulently joined defendant would serve as a further inducement to engage in the fraudulent joinder of defendants to defeat diversity.

In addition to its economic analyses showing damages exceeding the jurisdictional limits, State Farm points to plaintiff's refusal to respond to discovery requests concerning his damages. [Doc. 2, ¶16]. Before removing the case from state court, State Farm served the following request for admission: "Admit that Plaintiff's claims do not exceed $75,000.00 in this suit (exclusive of interest and costs)." [Doc. No. 2-8, Ex. 7 to Notice of Removal]. Plaintiff claimed in response that he "cannot determine the total value of his claim at this time," and would supplement the response "[o]nce discovery is complete." [*Id.*] "While plaintiff's refusal to provide discovery responses does not provide an independent basis for removal, it can be a factor inthe court's determination that the amount in controversy requirement is satisfied." *Torres v. Cintas Corporation,* 2008 WL 2510133 at *4 (N.D. Okla., June 19, 2008), citing *Rubel v. Pfizer, Inc.,* 361 F.3d 1016, 1020 (7th Cir. 2004); *Wilbanks v. North American Coal Corp.,* 334 F.Supp.2d 921, 925-26 (S.D. Miss. 2004); *Scwenk v. Cobra Mfg. Co.,* 322 F.Supp.2d 676, 680 (E.D. Va. 2004).

Based upon State Farm's economic analysis of potential damages from the allegations of the complaint, and further supported by plaintiff's refusal to answer discovery requests about his damages, the court finds State Farm has met its burden of establishing the amount in controversy meets the jurisdictional limit of $75,000.

### B. Fraudulent Joinder of Non-Diverse Defendant

State Farm is a corporation organized in Illinois, with its principal place of business in Bloomington, Illinois. Defendant Porter is a citizen of Jackson County, Missouri. Defendant

8

Cooks is a citizen of Tulsa County, Oklahoma. The Amended Petition alleges Cooks slandered plaintiff by telling "several people who live near Plaintiff on Grand Lake that Ryan had actually taken his own boat, thus exposing Plaintiff to ridicule with actual malice, knowing it was false or made with reckless disregard as to its truth or falsity." [Doc. 2-4, ¶34]. State Farm contends that although Cooks was involved in the investigation of plaintiff's insurance claim, discovery has shown the alleged slanderous statements, if made at all, were made by Porter–not Cooks.

"While issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Smoot v. Chicago, Rock Island and Pacific Railroad Company,* 378 F.2d 379, 881-82 (10th Cir. 1967). Thus, the court "may pierce the pleadings, consider the entire record and determine the basis of joinder by any means available." *Id.* at 882 (citations omitted).

Oklahoma statutorily defines slander as:

[A] false and unprivileged publication, other than libel, which:

1. Charges any person with crime, or with having been indicted, convicted or punished for crime.

2. Imputes in him the present existence of an infectious, contagious or loathsome disease.

3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit.

4. Imputes to him impotence or want of chastity; or,

> 5. Which, by its natural consequences, causes actual damages.

12 O.S. §1442. The first four provisions of §1442 constitute slander per se, whereas the fifth provision requires a showing of actual damages and thus states a slander per quod rule. *Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1552 (10th Cir. 1995) (citing *Standifer v. Val Gene Management Servs., Inc.,* 527 P.2d 28, 30-31 (Okla. Ct. App. 1974).

Under Oklahoma law, in order to recover for verbal defamation, a private figure must prove "(1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication." *Mitchell v. Griffin Television, L.L.C.,* 60 P.3d 1058, 1061 (Okla. Civ. App. 2002). "An action is actionable per se only when the language used is susceptible of but one meaning, and that an opprobrious one." *Krebsbach v. Henley,* 725 P.2d 852, 856 (Okla. 1986).

In response to a discovery request, plaintiff alleged Cooks had made slanderous statements to two individuals: The former owner of the boat, Richard Cantu, and Derrick Bidleman. [Doc. No. 2, ¶22 and Doc. No. 2-11, Ex. 10, Answer to Int. No. 4]. Counsel for State Farm contacted Cantu, who told her he had no recollection of any slanderous statements by any representatives of State Farm, including Cooks. [Doc. No. 2, ¶22 and Doc. No. 2-12, Ex. 11]. Plaintiff withdrew Cantu as a witness. [*Id.,* Doc. Nos. 2-12, 2-13, Exs. 11-12].

State Farm deposed the other individual, Derrick Bidleman, on March 10, 2009. Bidleman testified the only State Farm investigator he talked to about plaintiff's claim was Porter. [Doc. No. 2 and Doc. No. 2-7, Ex.6, Dep. Of Derrick Bidleman, p.8, ll. 8-13]. State

Farm, asserting plaintiff could not legally establish a cause of action against Cooks for slander, promptly removed the case to this court.

In support of his Motion to Remand, plaintiff attaches the Affidavit of Helen Hunt, plaintiff's wife. [Doc. No. 8-3, Ex. 2]. Hunt states in her affidavit that Cooks came to the couple's office in Ketchum to ask them about the boat claim. [*Id.,* Ex 2., ¶¶2, 4]. Hunt complains that Cooks asked questions such as, "Why did you leave the keys in the ignition?" "Who did you buy the boat from?", "Why don't you have a bill of sale for the boat?" "You don't have any receipts for improvements?" and made the statement, "I can't believe you don't know when the boat was stolen." [*Id.,* Ex. 2, ¶¶6-7]. Hunt states, "I felt Tony Cooks was insulting in the way he asked Mike questions..." and "The whole overtone of Tony Cooks' many, many questions, was to imply Mike took has own boat. I had the distinct impression that Tony Cooks was demeaning Mike and accusing him of stealing his own boat." [*Id.,* Ex. 2, ¶¶10-11]. Further, "Cooks would ask me questions indirectly–repeating Mike's answers but putting Mike's answers in a question-type form while looking at me. It was clear he was asking me if Mike was telling him the truth..." and "From the series of questions, I got the distinct impression that Tony Cooks was accusing Mike of insurance fraud." [*Id.,* Ex. 2, ¶¶12, 14].

Plaintiff also testified, "I never hear [Cooks] come out and accuse me of stealing my boat, but I–he left the impression with both myself and my wife that he certainly suspected foul play on our part, and that's the best I can describe it. It was just a gut feeling, and I think it was a good one." [Doc. No. 8-5, Ex. 4, Ryan Depo., p. 92, l. 22-p. 93, l. 3]

The court has reviewed Hunt's affidavit. Clearly, it does not allege statements which could be considered slander per se. Nor do the alleged statements qualify as slander per quod.

Indeed, the court cannot conclude the statements could be characterized as "false and defamatory statements," *Mitchell,* 60 P.2d 1061, or as statements with language "susceptible of but one meaning, and that an opprobrious one." *Krebsbach,* 725 P.2d at 856. The questions Cooks asked appear to be typical of those asked in investigation of an insurance claim. Plaintiff's "gut feeling" and his wife's subjective impressions do not transform the investigator's questions into defamatory statements.

Thus, after piercing the pleadings and examining the evidence submitted by the parties, the court concludes plaintiff cannot show Cooks made defamatory statements concerning plaintiff. Further, the court finds Cooks has been improperly joined.

### III. Conclusion

State Farm has meet its burden of demonstrating jurisdictional amount and fraudulent joinder of the nondiverse party, Tony Cooks. Therefore, plaintiff's Motion to Remand [Doc. No. 8] is denied.

ENTERED this 4th day of January, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma